J-E03002-25

2026 PA Super 126

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEVEN AHMAD WIGGS | : | |
| | : | |
| Appellant | : | No. 641 MDA 2023 |

Appeal from the Judgment of Sentence Entered April 3, 2023
In the Court of Common Pleas of Perry County Criminal Division at
No(s):  CP-50-SA-0000026-2021

BEFORE:  BOWES, J., OLSON, J., STABILE, J., DUBOW, J., KUNSELMAN, J.,
NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and BECK, J.

OPINION BY BOWES, J.:                    **FILED: JUNE 17, 2026**

Steven Ahmad Wiggs appeals from the judgment of sentence of a $500 fine imposed after he was found guilty at a *de novo* trial of a summary offense for having red and blue lights on his personal vehicle, which he used while acting as a constable.  We affirm.

On June 15, 2021, Pennsylvania State Police ("PSP") Trooper Jacob Brown-Shields observed a "fully marked black and white [C]rown [V]ic[1] style

_____

[1] We note that the Crown Victoria Police Interceptor was the iconic police vehicle on the street and on the screen in the 1990s.  As explained in an article examining its importance in popular culture:

> The *Times* recently reported that police departments are assigning officers the last of the Ford Crown Victorias, thereby signalling [*sic*] the end for one of law enforcement's most iconic vehicles. Produced by Ford from 1979 to 2011, the heavyset sedan is beloved by police for its durability and muscle, and also, above all, for its hulking yet stealthy silhouette.  Anyone who has been pulled over in the past twenty years is self-trained in spotting an

*(Footnote Continued Next Page)*

constable vehicle" that was "equipped with a light bar on top." N.T. Summary Appeal, 4/3/23, at 7, 9. Having received a report of Appellant using a vehicle with flashing red and blue lights a couple of weeks prior, Trooper Brown-Shields followed the vehicle, verified that it was registered to Appellant, and initiated a traffic stop. Appellant, who was armed and dressed in a self-styled uniform, insisted to the trooper multiple times that "constables are police officers" and he was "allowed to have red and blue lights." *Id*. at 9. In similar fashion, Appellant had outfitted his personal vehicle with yellow striping, an image of the Pennsylvania coat of arms, and signage indicating "State Constable" and "Emergency 911." *Id*. at Exhibit D-3.

Since Appellant professed to being "embarrassed about being pulled over" while acting as a constable, Trooper Brown-Shields permitted Appellant to activate his lights to appear as though he was working in an official capacity with the trooper instead of being stopped by him. At a subsequent hearing, the trooper testified that although almost two years had passed from the date of the stop, he "believe[d]" Appellant took him up on this offer, and that in doing so visually confirmed that the lights flashed red and blue. *Id*. at 9.

---

unmarked Crown Vic. Its distinctive profile was so synonymous with the police that flashing lights became secondary. The mere sight of its outline was enough to frighten civilian drivers into compliance.

Sam Sweet, *The Crown Vic Jumps its Last Curb*, THE NEW YORKER, Sep. 3, 2013, *available at* https://www.newyorker.com/culture/culture-desk/the-crown-vic-jumps-its-last-curb.

Furthermore, Appellant conceded that the lights were red and blue when he explained to Trooper Brown-Shields that the PSP had previously seized the same vehicle and cited Appellant for having red and blue lights on it. After the citation was dismissed for reasons unknown to this Court, the PSP returned the vehicle to Appellant with the red and blue lights intact. Despite the PSP asking him to remove the red and blue lights, Appellant told the trooper that he had refused to do so because he had won the case as to whether he could use such lights. *Id*. at Exhibit D-2 (time stamp 7:45-9:08).

As will be discussed at length *infra*, the Vehicle Code specifies at 75 Pa.C.S. § 4571(b)(1) the types of vehicles that are permitted to have red and blue flashing lights. Trooper Brown-Shields determined that Appellant's vehicle was not one authorized by the statute and cited him for violating that provision. *Id*. at 12-14. After a Magisterial District Judge ("MDJ") found Appellant guilty, he appealed to the Perry County Court of Common Pleas. Appellant filed a pre-trial motion challenging the legality of the stop and the deletion of the trooper's mobile video recording prior to discovery, which was denied. Thereafter, Appellant proceeded to a *de novo* trial. Trooper Brown-Shields testified, and Appellant introduced photographs of his vehicle and a twenty-two minute audio recording he had made during the stop. At the conclusion, the court found Appellant guilty and imposed fines and the costs of prosecution.

This appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement, and the court issued a Rule 1925(a) opinion

addressing the claims raised by Appellant. In this Court, Appellant has refined

his issues to the following four questions:

1. Statutory Construction: Does the Statutory Construction Act lead to a holding that [Appellant]'s car was a "police vehicle," as that two-word phrase is used in the applicable statute, 75 Pa.C.S. § 4571 (through its definitions section, § 102)?

2. Void for Vagueness Doctrine: If the two-word phrase "police vehicle" is interpreted as not including a constable's marked vehicle (of the particular type that is the subject of the instant case), does convicting a constable (convicting him of an offense for which having a "police vehicle" is a complete defense) cause a due process violation (as applied to that particular type of vehicle), under the "void for vagueness" doctrine, under either the Constitution of the Commonwealth of Pennsylvania and/or the Constitution of the United States of America?

3. Wrong Charge: When a person is convicted under the wrong subsection of a statute, is that conviction void?

4. No Evidence: When the color of the allegedly red[ and ]blue lights on a constable's police car is an essential element of the alleged offense, and when there is zero evidence of the color of the lights in a light bar which is off, is that conviction void?

Appellant's brief at 8 (cleaned up).[2]

_____

[2] Following initial consideration by a three-judge panel of this Court, in which this author wrote to affirm his judgment of sentence, we granted Appellant's petition for reargument *en banc*. In addition to supplemental briefs by the parties, we also have the benefit of several *amicus curiae* briefs. In support of Appellant, we received briefs from a Sewickley Township resident, the Sewickley Township Constable's Office, and the Pennsylvania Police Alliance, a non-profit organization representing the interests of various "police organizations throughout Pennsylvania," including constables. **See** Brief of *Amicus Curiae* by Pennsylvania Police Alliance for the Appellant at 1. On behalf of the Commonwealth, the Pennsylvania District Attorneys Association filed a brief, and the PSP and Pennsylvania Commission on Crime and Delinquency authored a joint brief. Much of the briefs concern policy arguments that we
*(Footnote Continued Next Page)*

I.

Appellant first challenges the court's interpretation of the Vehicle Code as prohibiting him from equipping his personal vehicle with red and blue flashing lights because he is a constable. He accepts that § 4571(b)(1) does not explicitly authorize constable vehicles to utilize such lights. Instead, he argues that "[a] constable vehicle is a police vehicle [because] a constable is a police officer." *Id*. at 11 (unnecessary capitalization omitted). Under this argument, since police vehicles are permitted to have red and blue lights, he claims that, as a constable, he cannot be found guilty of a summary offense for having them on his personal vehicle.

This issue requires us to interpret § 4571 to determine whether Appellant's vehicle was authorized to exhibit such lights. As this presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *See Vellon v. Dep't of Transportation, Bureau of Driver Licensing*, 292 A.3d 882, 890 (Pa. 2023). Statutory interpretation is, of course, conducted in accordance with the Statutory Construction Act:

> Pursuant to that Act, "[t]he object of all statutory interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). When, however, the words of a statute are not explicit, a court may discern the General Assembly's intent by examining considerations outside of the

do not reach in this opinion because, as discussed at length *infra*, the text of § 4571(b)(1) unambiguously excludes Appellant's vehicle as one authorized to utilize red and blue lights.

words of the statute. 1 Pa.C.S. § 1921(c). In addition, when construing a statute, we must, if possible, give effect to all of its provisions. 1 Pa.C.S. § 1921(a).

*Id*. at 890 (citations altered).

In interpreting the operative word or phrase, we first examine the statute itself for a definition. However, the lack of a definition does not render the term ambiguous. *See Commonwealth v. Phillips*, 344 A.3d 360, 368 (Pa. 2025). In other words, we do not switch to the tools reserved for statutory construction of ambiguous statutes simply because the statute does not define the implicated term. Rather, "we ascertain the plain meaning of a statute by ascribing to the particular words and phrases the meaning which they have acquired through their common and approved usage, and in context." *Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022) (cleaned up). In doing so, "we are able to, *inter alia*, consult the dictionary, which is one tool that this Court uses to apprehend a term's plain meaning." *Phillips*, 344 A.3d at 368 (cleaned up); *see also Gamby*, 283 A.3d at 307 ("To discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions." (cleaned up)). Only in instances where the words of a statute are not explicit, or are ambiguous, do we consider the construction factors enumerated in 1 Pa.C.S. § 1921(c)." *Gamby*, 283 A.3d at 306 (cleaned up).

With these principles in mind, we turn to the statute at issue in the case *sub judice*. Appellant was convicted of violating § 4571 of the Vehicle Code

- 6 -

for possessing red and blue flashing lights on his personal vehicle. That section provides as follows, in pertinent part:

> **(a) General rule.--**Every emergency vehicle shall be equipped with one or more revolving or flashing red lights and an audible warning system. Spotlights with adjustable sockets may be attached to or mounted on emergency vehicles.
>
> **(b) Police, sheriff, fire and coroner or medical examiner vehicles.--**
>
> > (1) Police, sheriff, coroner, medical examiner or fire police vehicles may in addition to the requirements of subsection (a) be equipped with one or more revolving or flashing blue lights. **The combination of red and blue lights may be used only on police, sheriff, coroner, medical examiner or fire police vehicles.**
> >
> > (2) Unmarked police and sheriff vehicles used as emergency vehicles and equipped with audible warning systems shall be equipped with the lights described in this subsection.
> >
> > . . . .
>
> **(d) Vehicles prohibited from using signals.--**Except as otherwise specifically provided in this section, **no vehicle other than an emergency vehicle may be equipped with revolving or flashing lights or audible warning systems identical or similar to those specified in subsections (a) and (b).** A person who equips or uses a vehicle with visual or audible warning systems in violation of this section commits a summary offense and shall, upon conviction, be sentenced to pay a fine of not less than $500 nor more than $1,000.

75 Pa.C.S. § 4571 (footnote omitted, emphases added).

Section 4571(b)(1) expressly authorizes five classes of vehicles to have red and blue flashing lights: police vehicles, sheriff vehicles, coroner vehicles,

medical examiner vehicles, and fire police vehicles.[3]  These types of vehicles are not defined, but consistent with the rules of statutory interpretation, we ascribe to them their common usage.  Conspicuously absent is any reference to the private vehicles of independent contractors such as constables.  *See Commonwealth v. Rodriguez*, 81 A.3d 103, 108 & n.10 (Pa.Super. 2013) (holding that constables must privately purchase and insure their own vehicles, which are not government vehicles, and are therefore not exempt from the Vehicle Code's window tinting restrictions).

In considering the import of this list of vehicles, we note that our High Court has explained that the omission of a particular alternative from a statute indicates that the legislature intended to exclude it.  For example, in

_____

[3] According to the learned Dissent, our discussion about types of vehicles lacks "citation to any legal authority" and "attempts to shift the focus away from [a] plain reading" that constables, as police officers, have police vehicles and can therefore use these types of lights.  *See* Dissenting Opinion at 7.  As will be discussed *infra*, we cannot agree that Appellant's tortured argument constitutes a plain reading of the statute.  Moreover, we do not focus upon vehicles on a whim.  The General Assembly chose to classify which **vehicles** could equip red and blue flashing lights, not **whose** vehicles could use them.  Hence, that is where our analysis of the plain language of the statute lies.  Respectfully, we find that the Dissent's reliance upon *Commonwealth v. Rodriguez*, 81 A.3d 103 (Pa.Super. 2013), to instead support a focus upon the driver of the vehicle is misplaced.  *See* Dissenting Opinion at 7-8.  That panel decision determined that the applicable provision of the Vehicle Code pertained to "classes of vehicles" and addressed the status of the driver only after "[a]ssuming, *arguendo,* that we accepted the premise of [Rodriguez's] argument that the vehicles of government employees on official business are exempt from compliance with [75 Pa.C.S. §] 4524(e)(2)(i)[.]"  *Rodriguez*, 81 A.3d at 106-07.  Indeed, our Court "decline[d his] attempt to claim government employee status and extrapolate that status to encompass his vehicle."  *Id*. at 108.  In other words, both §§ 4524 and 4571 relate to types of vehicles, not the individual behind the wheel.

*Thompson v. Thompson*, 223 A.3d 1272 (Pa. 2020), the Court considered

whether 23 Pa.C.S. § 4345 authorized suspended sentences as punishment

for not complying with a child support order, reasoning as follows:

> Our interpretative analysis of [§] 4345(a) is straightforward, as there is no ambiguity in the statute. Section 4345(a) provides three express punishments for a support obligor who is found to be in contempt for noncompliance with a support order: (1) imprisonment for a period of up to six months; (2) a fine of up to $1,000; and (3) probation for a period of up to one year. 23 Pa.C.S. § 4345(a). It unequivocally provides that "[c]ontempt shall be punishable by any one or more" of the three alternatives it sets forth in subsections (a)(1)-(3), and it conspicuously does **not** include language imparting any discretion on a trial court to impose any other form of punishment, including a suspended sentence of incarceration. The omission of language condoning the imposition of suspended sentences speaks volumes, as it effectively prohibits trial courts from imposing them for civil contempt of a child support order. Long established maxims of statutory construction compel this result. Under the doctrine of *expressio unius est exclusio alterius*, "the inclusion of a specific matter in a statute implies the exclusion of other matters." ***See, e.g., Atcovitz v. Gulph Mills Tennis Club, Inc.***, 812 A.2d 1218, 1223 (Pa. 2002). Similarly, this Court has long recognized that as a matter of statutory interpretation, "although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say." ***See, e.g., Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.***, 788 A.2d 955, 962 (Pa. 2001). Applying these maxims, if the General Assembly intended to permit trial courts to impose suspended sentences for civil contempt of a child support order, it would have expressly provided for this alternative. **It did not**. We cannot ignore this exclusion. Because suspended sentences are not statutorily authorized as punishment for non-compliance with a child support order, they are illegal and may not be imposed.

*Thompson*, 223 A.3d at 1277-78 (emphases in original, citations altered).

Section 4571 unequivocally limits usage of red and blue flashing lights

to "police, sheriff, coroner, medical examiner or fire police vehicles." 75

Pa.C.S. § 4571(b)(1). While these vehicles are not statutorily defined, consistent with the rules of interpretation, we ascribe to them their common usage in the context of the emergency lighting provision. Such a reading confirms that constable vehicles are not encompassed within any of those vehicles. Therefore, the plain language of the statute, which patently omits constable vehicles from the list, reveals that our legislature did not intend to permit constable vehicles to be equipped with such lights. *See Thompson*, 223 A.3d at 1277-78.

Insofar as Appellant argues that his personal vehicle is a police vehicle, we cannot agree. As noted, although not defined within the statute, using common sense and reason, we surmise that a police vehicle is a vehicle owned by a police department for use by police officers in their official capacity as such. It does not include the personal vehicles of police officers for their own private use. As noted hereinabove, constables are not even granted government vehicles. As independent contractors, they must personally procure and insure their own vehicles to use when carrying out their duties. *See Rodriguez*, 81 A.3d at 108 & n.10. While we concede and laud the important work of our constabulary, it requires significant mental gymnastics to read into § 4571(b)(1) the conclusion that our General Assembly intended for a personally-owned vehicle of an independent contractor to be considered a police vehicle so as to display red and blue lights that only five specific types of vehicles are permitted to use.

Stated simply, § 4571(b)(1) expressly delineates the classes of vehicles that are allowed to use red and blue flashing lights, and Appellant's personal vehicle is neither expressly listed nor encompassed by any of the enumerated types of vehicles. Thus, pursuant to the plain language of the statute, his first issue accords him no relief.

II.

In a vacuum, our discussion of Appellant's first issue would necessitate no further discussion. We have applied the principles of statutory interpretation and, finding the statute unambiguous on its face, determined the legislature's intent through the plain language of the statute and without resorting to the rules of construction. However, we must address Appellant's argument, which relies upon the premise that instead of pertaining to classes of **vehicles**, § 4571(b)(1) applies to the use of vehicles by certain classes of **persons**. In that vein, he maintains that a constable is a police officer, and therefore his personal vehicle constitutes a police vehicle for purposes of § 4571(b)(1). In other words, Appellant contends that he is entitled to outfit his personal vehicle with red and blue flashing lights as a police vehicle because he, as a constable, is a police officer.

This argument fails for two reasons. First, as detailed above, § 4571(b)(1) pertains to certain classes of vehicles, not to the categories of

drivers.[4]  As it relates to the instant matter, our legislature conspicuously excluded vehicles utilized by constables from the list of vehicles allowed to use red and blue flashing lights.  Therefore, we are not persuaded by Appellant's logic.

Second, as will be discussed further *infra*, Appellant's declaration that a constable is a police officer for purposes of the Vehicle Code is not supported by either the clear language of that act or by the rules of statutory interpretation.

Unlike "police vehicle," the Vehicle Code defines "police officer" in another section, in the following manner:

> **Subject to additional definitions contained in subsequent provisions of this title which are applicable to specific provisions of this title,** the following words and phrases when used in this title shall have, unless the context clearly indicates otherwise, the meanings given to them in this section:
>
> . . . .
>
> **"Police officer."**  A natural person authorized by law to make arrests for violations of law.

75 Pa.C.S. § 102 (emphasis added).[5]

---

[4] By way of example, a person who steals a police vehicle may be guilty of many offenses, but among them would not be a violation of § 4571(d) since a police vehicle does not lose statutory authorization to have red and blue lights affixed simply because the driver is, momentarily and involuntarily, not a police officer.

[5] This is but one definition our General Assembly has set forth for the term "police officer."  The Pennsylvania Police Alliance urges us to use the definition
*(Footnote Continued Next Page)*

- 12 -

Our Supreme Court has interpreted this definition thusly:

[F]acially, the provision applies broadly to anyone with a power of arrest. Under the Statutory Construction Act, however, we presume that the General Assembly did not intend unreasonable results. In this circumstance, a literal reading of the Vehicle Code's definition of "police officer" would invest enforcement authority in all citizens, in light of their common-law arrest power. It is manifest, however, that the Legislature did not intend to denominate the citizenry at large as "police officers" or confer vehicle-related enforcement authority upon it. Thus, we find that the Legislature's definitional reference to the authorization "by law to make arrests for violations of law," 75 Pa.C.S. § 102, refers to some form of legal authorization beyond a mere common-law power shared among Pennsylvania citizens.

*Commonwealth v. Marconi*, 64 A.3d 1036, 1041 (Pa. 2013) (citations omitted). Based on the foregoing, the Supreme Court held that sheriffs and their deputies did not qualify as police officers within the Vehicle Code. *Id*. Consistent with this differentiation between sheriffs and police officers in the Vehicle Code, sheriff vehicles are specifically listed within § 4571(b)(1) as one of the select vehicles, in addition to police vehicles, authorized to equip red and blue flashing lights.

Turning to whether constables are encompassed within the Vehicle Code's definition of "police officer," we recognize that, like sheriffs, and indeed

---

set forth in the Dog Law: "Any person employed or elected by this Commonwealth, or by any municipality and whose duty it is to preserve peace or to make arrests or to enforce the law. The term includes constables and dog, game, fish and forest wardens." 3 P.S. § 459-102. As can be seen, this definition, which is context-specific to the Dog Law, expressly **includes** constables. However, the Vehicle Code's definition of "police officer" is subject to other provisions of that act, *see* 75 Pa.C.S. § 102, and not to those used within the Dog Law. Therefore, we will apply the Vehicle Code's definition in addressing Appellant's argument.

all citizens, constables possess common law arrest powers. In addition, though, they have statutory authority to effect certain limited arrests.[6] **See, e.g.**, 44 Pa.C.S. § 7158 (providing that constables may arrest an individual who: "(1) Is guilty of a breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness[;] (2) May be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens[; or] (3) Violates any ordinance of the borough for which a fine or penalty is imposed."). Notably, our Supreme Court held that constables lack statutory authority to conduct traffic stops to enforce the Vehicle Code. **See Commonwealth v. Roose**, 710 A.2d 1129, 1130 (Pa. 1998).

As prescribed at the outset of § 102, the pertinent definition of "police officer" is context-specific to the Vehicle Code, and subject to the other definitions set forth within that act. Consistent with that legal construct, the General Assembly lists constables and police officers separately within the Vehicle Code.[7] **See**, **e.g.**, 75 Pa.C.S. § 1376(b)(1), (5) (indexing individually

---

[6] Contrary to the Dissent's characterization, and as will be discussed *infra*, this is neither a concession nor a "begrudging" admission that constables are thus encompassed within the definition of "police officer." **See** Dissenting Opinion at 3, 6.

[7] As a side note, the Vehicle Code is not unique in this regard. Indeed, it is apparent from other statutes in Pennsylvania that the General Assembly treats constables and police officers as separate entities under the broader umbrella of peace officers. **See** 18 Pa.C.S. § 501 (defining "peace officer" in the Crimes Code as "[a]ny person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific

*(Footnote Continued Next Page)*

"[l]ocal police officers" and "[c]onstables or deputy constables" as those who may be delegated the authority to seize surrendered registration plates); 75 Pa.C.S. § 3102 (requiring compliance with the traffic direction of "any uniformed police officer, sheriff or constable"); 75 Pa.C.S. §§ 6309, 6309.1 (discussing impoundment by "police officer, sheriff or constable").

The General Assembly's distinctive treatment of constables and police officers within the Vehicle Code is critical. First, pursuant to the principle of statutory interpretation known as *expressio unius est exclusio alterius*, it highlights that the General Assembly deliberately excluded a constable's vehicle from § 4571(b)(1) as it explicitly listed constables alongside police officers in other provisions. Second, although Appellant purports to include constables as police officers in one part of the Vehicle Code, the remainder of the act reveals that they are often treated separately. We deem this particularly relevant given the mandate of § 102 that the definition of "police

_____

offenses . . ."). Even the statute prescribing "a constable's duties and authority, and the fees he may collect" describes the roles of constable and police officer as being discrete. ***Ward v. Com., Dep't of Transp., Bureau of Motor Vehicles***, 65 A.3d 1078, 1081 (Pa.Commw. 2013) (citation omitted); ***see also*** 44 Pa.C.S. § 7132(a) (providing that, subject to specific exceptions, "it is unlawful for a constable who is **also** employed as a policeman to charge or accept a fee or other compensation, other than his salary as a policeman, for services rendered or performed pertaining to his office or duties as a policeman or constable" (emphasis added)). While the learned Dissent assails our reference to other statutes as improperly employing the rules of statutory construction when we have deemed the statute unambiguous, we include this footnote merely as emphasis in discussing how Appellant's argument does not reflect the intention of the General Assembly, not for support of our main analysis set forth in Part I.

officer" is subject to the other provisions of the Vehicle Code, as well as the tenets governing statutory interpretation. Stated differently, constables and police officers are treated distinctly both within the context of the statute and in their common usage.

In short, we cannot simultaneously give the General Assembly's distinction between constables and police officers credit, and yet determine that it neglected to list constable vehicles in § 4571(b)(1) because it implicitly considers constables as police officers such that constable vehicles are subsumed within the phrase "police vehicles." If constables were police officers pursuant to the definition in § 102, there would be no need to list constables separately from police officers in §§ 1376(b), 3102, 6309, and 6309.1.[8] Indeed, sheriffs are similarly listed discretely in three of these

---

[8] At this juncture, we must rebut the Dissent's accusation that we are applying the rule of statutory construction about the particular controlling the general, and that the sometimes separate enumerations of police officers and constables in the Vehicle Code is the "lynchpin of [our] analysis[.]" Dissenting Opinion at 14, 18. This is patently untrue. First and foremost, the "lynchpin" of our analysis is that constable vehicles are not listed in § 4571(b)(1), and therefore Appellant violated § 4571 by placing red and blue lights on his personal vehicle.

Moreover, the doctrine we employ in our analysis is not a rule of construction pertaining to conflicting provisions within a statute, but rather the legal maxim known as *expressio unius est exclusio alterius*, which means simply that "the inclusion of a specific matter in a statute implies the exclusion of other matters." **Thompson v. Thompson**, 223 A.3d 1272, 1277 (Pa. 2020) (cleaned up). This principle aids in interpreting an unambiguous statute, not construing an ambiguous one. **Id**. (using the doctrine in the court's "interpretative analysis of [23 Pa.C.S. §] 4345[, which it had found wa]s straightforward, as there is no ambiguity in the statute"). In **Mimi**
*(Footnote Continued Next Page)*

sections, but unlike a constable's vehicle, the legislature specifically included sheriff vehicles in the short list of vehicles authorized by § 4571(b)(1) to utilize red and blue flashing lights.[9]  Thus, we reject Appellant's argument that a

_____

*Investors, LLC v. Tufano*, 297 A.3d 1272, 1285 (Pa. 2023), the High Court reiterated the applicability of this legal tenet in statutory interpretation, not construction.  To wit, in that case it found "no basis to proceed to the secondary steps of our rules of statutory construction given the lack of ambiguity in the terms of" the pertinent statute.  Instead, it applied, *inter alia*, two legal precepts in conducting its statutory interpretation of the text's plain language:

> It is abundantly clear that when the General Assembly intended to include a scienter element in the material provisions of the [act], it unambiguously utilized explicit language to that effect.[21]
>
> _____
>
> [21] Thus, two legal maxims ostensibly apply in these circumstances.  First, "[u]nder the doctrine of *expressio unius est exclusio alterius*, 'the inclusion of a specific matter in a statute implies the exclusion of other matters.' " *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020) (internal citations omitted).  Second, while we primarily focus on what a statute says, it may at times be equally important to recognize what a statute does not say.  *Id*. Here, the General Assembly's refusal to utilize the diction of scienter in Section 1-401(b) is particularly notable precisely because the Legislature so readily used the omitted language elsewhere in the [act].

*Mimi Invs., LLC*, 297 A.3d at 1286.

[9] This comports with the High Court's acknowledgement that "duly-trained sheriffs may enforce provisions of the Vehicle Code to the limits of their common-law peacekeeping authority, as articulated in *Commonwealth v. Leet*, 641 A.2d 299 (Pa. 1994)." *Commonwealth v. Marconi*, 64 A.3d 1036, 1042 (Pa. 2013) (citation altered).  In *Leet*, the Supreme Court "effectively superimposed those powers onto the Vehicle Code, while judicially inserting a training requirement into the statute, apparently to ameliorate undesirable ramifications of its holding which otherwise would have ensued." *Marconi*, 64 A.3d at 1042 (citation omitted).

constable is a police officer for purposes of the Vehicle Code, and we hold that a constable cannot invoke the authorization afforded to police vehicles to equip his personal vehicle with red and blue flashing lights.

Once more, "we find nothing in the plain reading of the statutory language to be unclear or ambiguous, and, as such, we do not resort to other principles of statutory construction to elicit the meaning of the phrase." **Phillips**, 344 A.3d at 368 (cleaned up). Nonetheless, we are compelled to address Appellant's arguments. Unpersuaded by the fact that the statutory language does not explicitly include constables within the definition of a police officer, Appellant valiantly advances his argument that the statute must implicitly include constable vehicles within the characterization of police vehicles by pointing to our Supreme Court's statement in a footnote that "[t]he constable is a police officer" in **In re Act 147 of 1990** ("**In re Act 147**"), 598 A.2d 985, 990 n.3 (Pa. 1991). **See** Appellant's brief at 19. Thus, we must also explain why this proposition fails, , which necessitates various forays into areas we would not otherwise discuss.

First, the **In re Act 147** statement is wholly inapplicable to the matter before us in that the case from which it derives did not involve the Vehicle Code or touch upon the limited issue before us in this matter. Rather, that case addressed the issue of where constables belonged within our governmental system for purposes of oversight and accountability. Our Supreme Court ultimately categorized constables as executive branch officials.

Since Act 147 had placed constables within the judicial hierarchy, the Court found the act unconstitutional. Thus, ***In re Act 147*** is simply inapt.

Second, the High Court's statement that a "constable is a police officer" must be considered in the proper context. Notably, it appeared in a footnote as a reference to the comic opera, *The Pirates of Penzance*. In full, the phrase relied upon by Appellant appears thusly:

> Simply stated, a constable is a peace officer.[3] A constable is a known officer charged with the conservation of the peace, and whose business it is to arrest those who have violated it. By statute in Pennsylvania, a constable may also serve process in some instances. As a peace officer, and as a process server, a constable belongs analytically to the executive branch of government, even though his job is obviously related to the courts. It is the constable's job to enforce the law and carry it out, just as the same is the job of district attorneys, sheriffs, and the police generally.[10] Act 147 is unconstitutional and violates the separation of powers doctrine in our Constitution because it attempts to place constables within the judicial branch of government and under the supervisory authority of the judicial branch. . . . At most, constables are "related staff" under the Rules of Judicial Administration. They cannot, however, be made part of the judicial branch under our Constitution. To attempt to do so constitutes a gross violation of the separation of powers. Personnel whose central functions and activities partake of exercising executive powers cannot be arbitrarily made part of another branch of government whose functions they do not perform. To do so interferes with the supervisory authority of the

---

[10] In the Dissent's view, "[t]his description of constables doing the job of 'the police generally' directly contradicts the Majority's suggestion that a person's status as an 'independent contractor' somehow makes them not a 'police officer.'" Dissenting Opinion at 9 (citation omitted). We do not interpret this statement as meaning that constables are synonymous with police officers, any more than with sheriffs or district attorneys as the Dissent's reading would seem to imply, but merely that a constable's duties overlap in some fashion with those executive branch officials such that constables must fall under the same branch of government.

Supreme Court just as much as attempting to dictate how that authority is to be exercised over personnel who are properly part of the judicial system. In consequence, we find Act 147 unconstitutional and invalid.

_____

[3] **The constable is a police officer.** It would perhaps not be remiss to recall Sir William S. Gilbert's famous line from *The Pirates of Penzance,* "When constabulary duty's to be done, to be done, a policeman's lot is not an 'appy one!"

*In re Act 147*, 598 A.2d at 990 (cleaned up, emphasis added).

Determining that a constable cannot be placed within the judiciary because that position constitutes an executive branch official, the Court observed that "[a] constable is an elected official[,] . . . an independent contractor[,] and is not an employee of the Commonwealth, the judiciary, the township, or the county in which he works." *Id*. at 986 (cleaned up). In other words, it is apparent that constables exist in a league of their own, separate and apart from police officers.

To illustrate, constables are elected by the citizenry or appointed in the event of a vacancy, *see* 44 Pa.C.S. § 7111-7114, and they do not undergo the rigors of training under the Municipal Police Education and Training Law ("MPETL"). *See* 53 Pa.C.S. § 2167(a) ("All municipalities of this Commonwealth or groups of municipalities acting in concert and all colleges and universities shall be required to train all members of their police departments pursuant to this subchapter prior to their enforcing criminal laws, enforcing moving traffic violations under Title 75 (relating to vehicles) or being authorized to carry a firearm."). The Municipal Police Officers' Education and Training Commission ("MPOETC") has mandated that aspiring police officers

- 20 -

demonstrate certain physical fitness standards before entry into the training program. Once admitted, trainees undergo 919 hours of classroom and practical instruction, including forty hours on the operation of emergency vehicles and 124 hours on firearms. Additionally, a trainee must pass with a score of at least 80% on various exams throughout the program, including a driving skills test, before being eligible to take the 200-question certification exam to become a police officer. **See** Physical Fitness, available at https://www.pa.gov/agencies/mpoetc/programs/training/basic-police-officer -training/physical-fitness.html; **see also** Municipal Police Officer Basic Training Program, 2024, available at https://www.pa.gov/content/dam/ copapwp-pagov/en/mpoetc/documents/training/basic-police-officer-training/ curriculum_overview_2024.pdf); **see also** MPOETC 2022 Basic Police Syllabus, available at https://www.pa.gov/content/dam/copapwp-pagov/en/mpoetc/documents/training/basic-police-officer-training/basic%20 police%20training%20syllabus.pdf.

On the other hand, constables undergo only eighty hours of basic training and forty hours of firearms instruction, with the requirement that they achieve a passing score of at least 70% on each written exam. **See** 44 Pa.C.S. § 7145 ("The Constables' Education and Training Program shall include training for a total of [eighty] hours, the content of which shall be determined by regulation. The training shall include instruction in the interpretation and application of the fees provided for in [§] 7161 (relating to fees).");

Constables' Education and Training, available at https://www.pa.gov/agencies/pccd/programs-and-services/training/public-safety-training/cetb-training.html. Therein, the only training pertinent to the use of a vehicle is four hours of instruction about prisoner transport and how to reduce the possibility of an escape. *See* Constables' Education and Training.

We do not extrapolate from the High Court's footnote and operatic allusion any equivalency between constables and police officers for purposes of the Vehicle Code and the employment of red and blue flashing lights on their vehicles. Instead, we heed the warning of our Supreme Court regarding "the necessity of reading legal rules—especially broad rules—against their facts and the corollary that judicial pronouncements should employ due modesty." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 378 (Pa. 2014). The Court adopted "the principle that the holding of a decision is to be read against its facts" precisely because "it is very difficult for courts to determine the range of factual circumstances to which a particular rule should apply in light of the often myriad possibilities." *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 490-91 (Pa. 2009). In doing so, the Court echoed the sentiment of the Seventh Circuit Court of Appeals that "[j]udicial opinions are frequently drafted in haste, with imperfect foresight, and without due regard for the possibility that words or phrases or sentences may be taken out of context and treated as doctrines." *Id*. (cleaned up).

Consistent with this approach, a panel of this Court previously grappled with the import of **In re Act 147**'s statement about the role of constables:

> The Supreme Court's statement that "a constable is a peace officer" was merely express recognition of a well-settled legal principle. **See e.g.,** Black's Law Dictionary (5th ed. 1979) (defining "peace officers" to include "sheriffs and their deputies, constables . . . and other officers whose duty it is to enforce the peace."), and 6A C.J.S. Arrest, § 17 ("Justices, sheriffs, coroners, constables and watchmen are recognized peace officers at common law."). Lastly, 16 P.S. § 1216, Peace officers; powers and duties, expressly applies to constables.
>
> Moreover, following its statement that "a constable is a peace officer," the Court inserted a footnote which provides, "[t]he constable is a police officer." **In re Act 147 of 1990**, 598 A.2d at 990. Instantly, the Commonwealth asserts that this statement constitutes Supreme Court recognition that constables possess "the same authorities and duties" as police officers under all circumstances. We flatly reject this claim. Specifically, when read in the context in which it was uttered, the Court's statement indicates that the powers of constables and police officers are coextensive in matters relating to "conservation of the peace." **Id**. Further, as the remainder of the Court's opinion indicates, its notation that "[t]he constable is a police officer" was intended as further support for the Court's ultimate conclusion that "a constable belongs analytically to the executive branch of government." **Id**. Therefore, since **Act 147** did not involve the relative arrest powers of constables and police officers, the Court's statement cannot be taken as a blanket endorsement of constable powers coextensive with those of police officers under all circumstances. Finally, the Court's finding that constables are independent contractors . . . clearly indicates that the Court did not consider constables and police officers analogous for all purposes, since Pennsylvania law has never characterized police officers as independent contractors.

**Commonwealth v. Taylor**, 677 A.2d 846, 847 n.6 (Pa.Super. 1996) (cleaned up).

It is plain to us that the ***In re Act 147*** Court was not considering whether constables were police officers for purposes of the types of lights permitted on their cars under the Vehicle Code. Rather, it was contemplating within which branch of government constables fit, and concluded that, as peace officers with responsibilities similar to those of district attorneys, sheriffs, and police officers, they fell within the executive branch. As such, we will not take the aforementioned footnote out of context and manipulate it to fit Appellant's desired outcome. ***See Maloney***, 984 A.2d at 490.

Finally, even if the language of the statute was ambiguous, which it is not for the reasons outlined in Part I *supra*, we would not be persuaded by Appellant's arguments that a constable is a police officer and therefore he may outfit his constable vehicle with any lights permitted to be equipped on a police vehicle. Read "in the light of reason and common sense," § 4571(b)(1) intended to restrain use of red and blue lights to those government vehicles operated by specifically-delineated officials with either the authority to enforce the Vehicle Code or a particular responsibility in responding to serious emergencies. ***See Vellon***, 292 A.3d at 890 (cleaned up); 75 Pa.C.S. § 4571 (limiting the usage of red and blue lights to "police, sheriff, coroner, medical examiner or fire police vehicles"). Constables lack the authority to do either. Thus, we are not persuaded by Appellant's arguments and instead adhere closely to the text of the statute, which plainly omits personal vehicles from red-and-blue-light authorization.

III.

Before turning to Appellant's remaining claims, we feel compelled to respond to the Dissenting Opinion, which lambasts us for purportedly "improperly appl[ying] the rules of statutory construction [and] ignor[ing] plain statutory definitions and cherry-pick[ing] inapplicable exceptions, thwarting legislative intent." Dissenting Opinion at 2. As it appears our esteemed colleague has misread this Opinion, we include this section to assuage some of the concerns raised thereby.

First, we must correct the Dissent's framing of this case. In its opinion, the Dissent identifies the sole issue as being whether "a constable . . . could be cited for violating [§] 4571(d) of the . . . Vehicle Code . . . due to having flashing red and blue lights mounted on his vehicle, when such lights are only permitted on specified 'emergency vehicles,' as defined in the [Vehicle Code.]"[11] Dissenting Opinion at 1-2 (footnote omitted). This is a misreading of the statute. Certainly, § 4571(d) references the broad term emergency vehicles, but it does so because it encompasses violations of both § 4571(a), authorizing **red** lights on emergency vehicles, as well as § 4571(b), which limits the usage of red **and blue** lights to five subsets of emergency vehicles. Appellant's vehicle is prohibited from using red and blue signals not by virtue

_____

[11] Some of our quotations of the Dissenting Opinion unfortunately contain ellipses and brackets to change its use of "Motor Vehicle Code" or "MVC" to "Vehicle Code," in deference to our General Assembly, which dictated that Title 75 "shall be known and may be cited as the 'Vehicle Code.'" 75 Pa.C.S. § 101.

of not being an emergency vehicle, but because it is not one of the five enumerated vehicles that is allowed to equip red **and blue** lights pursuant to § 4571(b). Therefore, the question is not whether Appellant's vehicle is an emergency vehicle, but, more narrowly, whether it is one of the five vehicles listed in § 4571(b)(1). As explained *supra*, it patently is not.

The Dissent avers that we improperly employ rules of statutory construction, such as considering other statutes on similar topics, to discern the legislature's intent despite finding that § 4571 is unambiguous.[12] **See** Dissenting Opinion at 12. In our principal analysis of Appellant's first issue, we acknowledge that we discuss 23 Pa.C.S. § 4345. **See supra** at 8-9. However, we do not do so pursuant to any rule of construction to discern the legislature's intent within § 4571. Rather, it is mentioned only to give context to our explanation of the legal maxim *expressio unius est exclusio alterius*, which was detailed by the **Thompson** Court when discussing its statutory interpretation of the unambiguous language of § 4345.[13]

---

[12] Interestingly, while taking us to task for allegedly looking outside the four corners of the statute to ascertain the legislature's intent, the Dissent also steps outside the statute in question to support its interpretation by comparing it to Pa.R.Crim.P. 103, a procedural rule adopted by our Supreme Court, not a law enacted by our General Assembly. **See** Dissenting Opinion at 5 n.3.

[13] The Dissent insists that we have misapplied this maxim and instead employed the rule of construction set forth at 1 Pa.C.S. § 1933, that the particular controls the general. **See** Dissenting Opinion at 15-20. We reiterate that the two concepts are not the same and, as detailed hereinabove, we are not applying that construction provision.

The only other references appear in Part II of this Opinion, which is an alternative analysis disposing of Appellant's contention that a constable vehicle is a police vehicle because he assumes a constable is a police officer. As detailed in that section, it is clear that this premise is faulty and cannot overcome the plain language of § 4571. Nonetheless, as Appellant and the Dissent espouse otherwise, we felt obligated to address it. In doing so, we cited other statutes merely to emphasize the distinction between constables and police officers in the Vehicle Code, outline the differences in how they are trained given Appellant's equation of the two positions, and to address a request in one of the *amicus* briefs to use the definition of "police officer" from the Dog Law. ***See supra*** at 14 n.7; ***id***. at 20-22; ***id***. at 12 n.5.

In further assault upon our writing, the Dissent alleges that we deemed the language unambiguous but then proceeded to construe the meaning of § 4571 as if it were ambiguous by looking at "the consequences of particular interpretations, and the object to be attained by the statutes' enactment." Dissenting Opinion at 12-13. As an illustration, the Dissent contends that "[a] central theme of [our] opinion is that the General Assembly intended to prohibit constables from mounting emergency lights" because they are trained differently than police officers and have different responsibilities. ***Id***. at 13 n.4. While we do not disagree that our decision demonstrates the differences between constables and police officers, our focus is not upon the vehicles the General Assembly sought to prohibit from using such lights, but whether Appellant's vehicle falls within the enumerated list of authorized vehicles.

Insofar as it can be inferred that we erroneously applied a rule of statutory construction to an unambiguous statute in rendering our decision, it would have only been in response to Appellant's insistence that a constable is a police officer, and therefore his private vehicle is a "police vehicle."

Finally, our esteemed fellow jurist proclaims that we "attempt. . . to undermine the reasonableness of Appellant's interpretation by suggesting that it would lead to an 'absurd' outcome," and in doing so, emphasizes the need for constable vehicles to utilize "emergency lights" in order "to carry out numerous traffic-related tasks[.]" *Id*. at 21-23. It may well be that constable vehicles can invoke the authorization given to other types of vehicles in the Vehicle Code to use a variety of colored lights to aid in their traffic-related duties. However, whether Appellant's vehicle was entitled to use the red lights of emergency vehicles or some other unspecified kind of light is not the question before us. The question is whether his vehicle could specifically use the emblematic red and blue lights preserved only for police vehicles, sheriff vehicles, coroner vehicles, medical examiner vehicles, and fire police vehicles. Once again, the answer to that question is that § 4571(b)(1) does not list any vehicle that would encompass Appellant's, and therefore he was prohibited from placing red and blue lights on his personal car.

To summarize, at no point do we rest our analysis upon an application of the rules of statutory construction rather than interpretation, not even when addressing Appellant's contrived arguments. We look simply at the plain language of the text, which conspicuously omits constable vehicles from the

list of those authorized to exhibit red and blue lights. A constable vehicle, which is necessarily a private vehicle of an independent contractor, is simply not a "police vehicle." Even if we were to concern ourselves with who is driving the vehicle in question to determine what type it is, which we decidedly do not except in response to Appellant's argument, constables are not police officers for purposes of the Vehicle Code. Besides an obscure reference to a comedic opera in a Supreme Court decision on a completely different issue, there has been no suggestion that a constable is a police officer. A constable may dress like a police officer, carry a weapon like a police officer, have some arrest powers like a police officer, and paint his car to look like a government-issued police vehicle, but that does not mean he is a police officer and, as is the most important point in this case, it does not mean that **his personal car** may have red and blue lights.

If our reading of the plain text has somehow mistaken the legislature's intent and the General Assembly instead believes constables should be able to use red and blue lights on their privately-owned vehicles, it can amend § 4571(b)(1) to explicitly provide such authorization for that type of vehicle as it did for police vehicles, sheriff vehicles, fire police vehicles, coroner vehicles, and medical examiner vehicles. Until then, it is self-evident from the common understanding of the language of the statute that the private vehicles of constables are not among the limited vehicles allowed to employ red and blue lights. Therefore, Appellant was prohibited from placing them on his personal vehicle.

With that clarified, we move on to Appellant's remaining issues.

IV.

Appellant next argues that § 4571(b)(1) is void for vagueness because it is subject to two "legally correct ways to read it[.]"[14]   Appellant's brief at 30.  We review such a challenge *de novo*.  ***See Commonwealth v. Davidson***, 938 A.2d 198, 203 (Pa. 2007).  The principles governing a void-for-vagueness claim are well-settled:

> Under the void-for-vagueness standard, a statute will only be found unconstitutional if the statute is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.  However, a statute will pass a vagueness constitutional challenge if the statute defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.  Due process requires that a criminal statute give fair warning of the conduct it criminalizes.  Furthermore, even if the General Assembly could have chosen clearer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague.

***Id***. at 207–08 (cleaned up).

Here, the Vehicle Code clearly lists which vehicles may utilize red and blue lights.  As indicated, constable vehicles are not specified as one of those.

---

[14] The Commonwealth avers that this issue is waived because Appellant did not include it in his Rule 1925(b) statement.  ***See*** Commonwealth's brief at 7. Rather than directing us to where in the statement he preserved it, Appellant merely retorts that "he did."  Appellant's reply brief at 1.  While his concise statement could have benefited from a clearer indication that he was challenging the vagueness of § 4571, the trial court interpreted it to include such a claim and addressed it.  ***See*** Trial Court Opinion, 7/7/23, at unnumbered 2-5.  Accordingly, we decline to find waiver.

While Appellant and the Dissent have interpreted the statute differently than this Court, the trial court, the MDJ, and Trooper Bown-Shields, that does not mean that it has two equally plausible readings. A commonsense interpretation of the plain language of the Vehicle Code provides notice to lay individuals that only the vehicles explicitly listed may be outfitted with red and blue lights. The legislature was not required to add language explaining which vehicles were **prohibited** when it clearly delineated which ones were **permitted**. Since the statute is not vague, this claim fails.

V.

In his third issue, Appellant avers that he was convicted under the wrong subsection of § 4571. ***See*** Appellant's brief at 34. Specifically, he contends that he was improperly charged with § 4571(a) and convicted of a violation of § 4571(b)(1), when he should have been charged and convicted of § 4571(d). To refresh, these subsections provide as follows:

> **(a) General rule.--**Every emergency vehicle shall be equipped with one or more revolving or flashing red lights and an audible warning system. Spotlights with adjustable sockets may be attached to or mounted on emergency vehicles.
>
> **(b) Police, sheriff, fire and coroner or medical examiner vehicles.--**
>
>> (1) Police, sheriff, coroner, medical examiner or fire police vehicles may in addition to the requirements of subsection (a) be equipped with one or more revolving or flashing blue lights. The combination of red and blue lights may be used only on police, sheriff, coroner, medical examiner or fire police vehicles.
>>
>> . . . .

**(d) Vehicles prohibited from using signals.--**Except as otherwise specifically provided in this section, no vehicle other than an emergency vehicle may be equipped with revolving or flashing lights or audible warning systems identical or similar to those specified in subsections (a) and (b). A person who equips or uses a vehicle with visual or audible warning systems in violation of this section commits a summary offense and shall, upon conviction, be sentenced to pay a fine of not less than $500 nor more than $1,000.

75 Pa.C.S. § 4571. In addition to the discrepancy between the charging document and his conviction, Appellant maintains that he could only be convicted of subsection (d) because that is the provision that prohibited the relevant conduct. *See* Appellant's brief at 35-37.

By way of background, Appellant was cited with a violation of subsection (b)(1) and convicted at the same subsection following a *de novo* appeal. Therefore, any complaint about the validity of his summary conviction before the MDJ was nullified by his appeal to the Court of Common Pleas for a trial *de novo*.

As to whether Appellant should have been charged with subsection (d) instead of (b)(1), we agree with the trial court's explanation of the interplay between these subsections: "[I]t's clear [§ 4571(d)] is what happens if you are convicted or in violation of [§] 4571(b)(1)." N.T. Summary Appeal, 4/3/23, at 44. Based on the foregoing, we discern no error in Appellant being charged with violating § 4571(b)(1) as he equipped red and blue lights to a vehicle that lacked statutory authorization. Having violated § 4571(b)(1), the

grading of his offense and the parameters of his punishment were set forth in § 4571(d).  No relief is due.

## VI.

Finally, Appellant challenges the sufficiency of the evidence to sustain his conviction because he contends that there was no evidence that the light bar, which was clear when not illuminated, contained red and blue lights.  **See** Appellant's brief at 38-40.  He maintains that the lights were never activated and the trooper's testimony indicated he was unsure whether he had observed the color of the lights.  **Id**. at 39.

We review a claim challenging the sufficiency of the evidence pursuant to these well-established legal principles:

> In reviewing sufficiency of evidence claims, we determine whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports the jury's findings of all the elements of the offense beyond a reasonable doubt.  A sufficiency challenge is a pure question of law.  Thus, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Jacoby**, 170 A.3d 1065, 1076 (Pa. 2017) (cleaned up).

While understandably not without some qualification due to the intervening two years, Trooper Brown-Shields testified that it was his recollection that he permitted Appellant to turn on his lights during the traffic stop and that, when he did so, it confirmed that the lights were red and blue. Additionally, the trooper attested that Appellant conceded the light bar

contained red and blue lights, and asserted that he was permitted to have them.

Although it is unclear from the audio recording whether Appellant in fact illuminated his lights during the stop, the recording confirms that the trooper gave him the option to turn on his lights so he would feel less embarrassed about being pulled over in his constable vehicle. Nothing in the recording contradicts the trooper's testimony that Appellant opted to activate his lights.

More importantly, the audio evidence corroborated the trooper's testimony that Appellant himself conceded the color of the lights. As noted at the outset, Appellant stated during his conversation with Trooper Brown-Shields that the PSP had previously seized the same vehicle for having red and blue lights. He explained that he was cited for a violation of § 4571, but the citation was ultimately dismissed and the vehicle returned to him with the red and blue lights still affixed. Appellant boasted that when asked to remove the lights thereafter, he refused to do so because he had won the case. ***See*** Exhibit D-2 at 7:45-9:08. Therefore, Appellant himself confirmed that the lights were still the same red and blue ones. Indeed, Appellant reported that whenever there is a disabled vehicle on the road or he observes a breach of the peace and the troopers are not on scene, "my lights are on." ***Id***. at 21:20-21:35. At no point did Appellant indicate that his lights were anything other than red and blue. Rather, he emphatically insisted throughout the encounter that he was entitled to have red and blue lights on his vehicle because he was a police officer.

Viewing this evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to prove that Appellant's light bar emitted red and blue flashing lights in violation of § 4571(b)(1). Accordingly, Appellant's sufficiency challenge fails.

VII.

In light of the foregoing, we discern no reason to overturn Appellant's summary conviction. Therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judges Olson, Dubow, Kunselman, Nichols, Murray, McLaughlin, and Beck join this Opinion.

Judge Stabile files a Dissenting Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/17/2026